RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0280p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

KENNETH JAMES LOWE,

    *Plaintiff-Appellant*,

    *v.*

WALBRO LLC,

    *Defendant-Appellee*.

No. 19-2386

---

Appeal from the United States District Court
for the Eastern District of Michigan at Bay City.
No. 1:18-cv-12835—Thomas L. Ludington, District Judge.

Argued: August 5, 2020

Decided and Filed: August 26, 2020

Before: GILMAN, BUSH, and READLER, Circuit Judges.

---

## COUNSEL

**ARGUED:** Matthew D. Klakulak, GIROUX AMBURN PC, Southfield, Michigan, for Appellant. David M. Cessante, CLARK HILL PLC, Detroit, Michigan, for Appellee. **ON BRIEF:** Matthew D. Klakulak, GIROUX AMBURN PC, Southfield, Michigan, for Appellant. David M. Cessante, Brian D. Shekell, CLARK HILL PLC, Detroit, Michigan, for Appellee.

---

## OPINION

---

    RONALD LEE GILMAN, Circuit Judge. In June 2018, Kenneth Lowe was fired from his job at Walbro LLC. Lowe was 60 years old at the time and had worked at Walbro for more than four decades. He responded by filing this lawsuit against Walbro, alleging that the

company had violated Michigan's Elliott-Larsen Civil Rights Act (ELCRA), Mich. Comp. Laws § 37.2101 *et seq.*, by discharging him because of his age. The district court granted summary judgment in favor of Walbro. For the reasons set forth below, we **REVERSE** the judgment of the district court and **REMAND** the case for further proceedings consistent with this Opinion.

## I.  BACKGROUND

Lowe, who was born in 1958, began working for Walbro as a stock handler at the age of 18. Over the course of his 41-year career with the company, he was promoted on several occasions. At the time that he was fired, he held the title of Area Manager, a position that he assumed in 2014.

Walbro describes itself as "a global market leader in engine management and fuel systems for the outdoor power equipment, recreational, marine, and personal transportation markets." It is headquartered in Arizona, but has offices in Cass City, Michigan (where Lowe worked throughout his career with Walbro) as well as in various other countries.

As Area Manager, Lowe was responsible for managing the maintenance of the entire Cass City facility. His responsibilities included maintaining blow-molding machines, assembly-line machines, and robotics equipment, as well as overseeing the janitorial staff and maintaining other areas of the plant.

According to Walbro, the work of the Cass City facility began to change significantly around 2009 or 2010. Previously, the plant had largely been used to produce carburetors, but later it evolved to focus primarily on blow molding (a process used to manufacture hollow plastic products) and robotics.

In June 2016, Walbro hired 35-year-old Tom Davidson as General Manager of the Cass City facility. Davidson testified that, soon after he assumed this role, he noticed that Lowe's understanding of robotics and blow molding was limited. According to Davidson, Lowe relied heavily on two subordinates—Rick Osterbeck and Nate Windsor—for the maintenance of the blow-molding machines and robotics equipment, and Lowe did not attempt to improve his own abilities in these areas.

Approximately six months later, Davidson removed Osterbeck and Windsor from reporting to Lowe. Davidson said that he did so because he believed that Lowe was "overwhelmed." Osterbeck and Windsor instead reported directly to Davidson after this change was made. Lowe was left managing only one portion of the building as well as conducting general facility maintenance. Davidson testified that Lowe's performance did not improve following this reorganization.

Lowe alleges that, throughout the roughly two-year period of time that he and Davidson overlapped at Walbro, Davidson made a series of disparaging statements about Lowe's age. For example, in October 2016, Lowe received an award recognizing his 40 years of employment with Walbro. According to Lowe, after he received the award and sat back down, Davidson said, at a volume where others in the room could hear him: "Old man, you been here longer than I am old. Aren't you ready to retire?" Lowe further testified that Davidson made "at least a dozen" statements about Lowe's age over the time period when both men were employed at the company. These included comments such as referring to Lowe as an "[o]ld man" and saying that he was "losing a step."

In March 2018, Walbro hired Debby Rard to serve as the Senior Human Resources Manager at the Cass City facility. Rard testified that, soon after she began working for Walbro, she was reviewing the company's organizational charts when she noticed that Lowe was serving as the Area Manager but had only a few janitors reporting directly to him. She concluded that the retention of this position did not make good business sense for Walbro and recommended to the company's leadership that Lowe's position be eliminated.

Rard also testified that, around this time, she began to receive complaints that Lowe had engaged in inappropriate behavior, such as bullying, vulgarity, and sexual innuendoes. She created a spreadsheet titled "Observed Behavior - Ken Lowe, Facilities Manager CAS" that catalogued six incidents of alleged inappropriate behavior regarding Lowe, which spanned from 2015 to 2018. The final incident listed on the spreadsheet took place on June 19, 2018 and was reported by Osterbeck. Osterbeck stated that, at a meeting involving Lowe, Osterbeck, and another employee, Lowe had said: "Rick, you suck Bill raw" and made an "inappropriate gesture."

Around this time—although the exact date is not clear from the record—Walbro made the final decision to terminate Lowe. According to Adam Arkells, Walbro's Vice President of Human Resources, this was a group decision, made by Arkells, Davidson, Rard, and two other people. Arkells testified that Lowe was fired because of a "culmination of a series of things," including Lowe's lack of ability to perform his position, the perception that his role was unnecessary, and the alleged harassing statements.

Davidson characterizes the situation somewhat differently. According to him, by the time of the June 19, 2018 incident with Osterbeck, the decision to eliminate Lowe's position had already been made, and any behavioral issues with Lowe did not factor into that decision. Walbro contends that this difference in testimony between Arkells and Davidson is immaterial because the key reason for Lowe's termination was simply that the Area Manager position was no longer needed, and that the other issues were "peripheral" ones that would have been addressed only if the position were retained.

Lowe was fired on June 28, 2018. On that date, Davidson asked Lowe to come to Davidson's office, where Rard was also present. Davidson read from a prepared script, informing Lowe that his position was being eliminated. Lowe later testified that, at this meeting, the following exchange took place:

> I did ask Tom [Davidson] about why—why was I terminated? Was it my job? Was I not doing the job? . . . And he just—basically he didn't answer me. He just said, well, you're kind of getting up there in years, you're at retirement age, you go one way and the company's going the other.

Rard denies that this exchange happened or that Davidson said anything to that effect. Davidson likewise denies that Lowe ever asked why he was being terminated.

Lowe filed this lawsuit in September 2018. He raised the single claim that his firing violated the ELCRA. After Walbro moved for summary judgment, the district court granted the motion. This timely appeal followed.

## II. ANALYSIS

### A. Standard of review

We review the district court's grant of summary judgment de novo. *Keith v. County of Oakland*, 703 F.3d 918, 923 (6th Cir. 2013). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### B. Elliott-Larsen Civil Rights Act

The ELCRA provides, in relevant part, that an employer shall not "[f]ail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status." Mich. Comp. Laws § 37.2202(1)(a). Lowe claims that Walbro violated the ELCRA by firing him on the basis of his age.

Proof of discriminatory treatment under the ELCRA "may be established by direct evidence or by indirect or circumstantial evidence." *Sniecinski v. Blue Cross & Blue Shield of Mich.*, 666 N.W.2d 186, 192 (Mich. 2003). Lowe argues that he presented sufficient evidence to avoid summary judgment under either theory. Because we conclude that Lowe's direct-evidence argument has merit, we need not address his second one.

"In cases involving direct evidence of discrimination, a plaintiff may prove unlawful discrimination in the same manner as a plaintiff would prove any other civil case." *Id.* The Michigan Supreme Court has adopted this court's definition of "direct evidence" in this context as "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Hazle v. Ford Motor Co.*, 628 N.W.2d 515, 520 (Mich. 2001) (quoting *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999)).

In a direct-evidence case involving mixed motives—that is, where "the adverse employment decision could have been based on both legitimate and legally impermissible reasons"—a plaintiff "must prove that the defendant's discriminatory animus was more likely than not a 'substantial' or 'motivating' factor in the decision." *Sniecinski*, 666 N.W.2d at 192–93 (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244 (1989) (plurality)).  Put slightly differently, the plaintiff must show that "the defendant was predisposed to discriminating against members of the plaintiff's protected class" and that "the defendant actually acted on that predisposition in visiting the adverse employment action on the plaintiff."  *Wilcoxon v. Minn. Mining & Mfg. Co.*, 597 N.W.2d 250, 257 (Mich. Ct. App. 1999).  Once a plaintiff meets the initial burden of proving that the illegal conduct "was more likely than not a substantial or motivating factor in the defendant's decision, a defendant has the opportunity to show by a preponderance of the evidence that it would have reached the same decision without consideration of the protected status."  *Downey v. Charlevoix Cnty. Bd. of Rd. Comm'rs*, 576 N.W.2d 712, 718 (Mich. Ct. App. 1998).

We note that, in some cases, the Michigan Supreme Court has imposed a more stringent standard of causation, requiring ELCRA plaintiffs to show that there was "but for causation or causation in fact" rather than simply showing that the animus was a substantial or motivating factor.  *Hecht v. Nat'l Heritage Academies, Inc.*, 886 N.W.2d 135, 146 (Mich. 2016) (quoting *Matras v. Amoco Oil Co.*, 385 N.W.2d 586, 589 (Mich. 1986)) (internal quotation marks omitted).  The Michigan courts have noted this discrepancy, but they do not appear to have definitively resolved it.  *See Hrapkiewicz v. Wayne State Univ. Bd. of Governors*, 910 N.W.2d 654, 654 (Mich. 2018) (Markman, C.J., dissenting from the denial of leave to appeal) ("These interpretations of the [ELCRA] are inconsistent, as *Hecht* imposes a considerably higher causation standard than *Hazle*.").

In the present case, both parties have briefed the issue along the lines of the *Hazle* and *Sniecinski* standard; neither side has cited *Hecht* or otherwise suggested that but-for causation is required.  We will thus follow the same approach in this Opinion.  In any event, we would conclude that Lowe has raised a genuine dispute of material fact under either standard, so the difference is immaterial for our purposes.

**C.    Direct evidence**

Lowe's central contention in this case is that the statements that Davidson allegedly made about Lowe's age constitute direct evidence of discrimination. The most significant of these was Davidson's alleged statement made at the June 2018 meeting when Lowe was fired. Again, Lowe recalls this statement as follows:

> I did ask Tom about why—why was I terminated? Was it my job? Was I not doing the job? . . . And he just—basically he didn't answer me. He just said, well, you're kind of getting up there in years, you're at retirement age, you go one way and the company's going the other.

The district court quoted this language in its recitation of the facts, but failed to specifically focus on the language's significance with regard to Lowe's ELCRA claim. Instead, the court simply asserted that "[e]ven if Davidson did in fact make the comments regarding Plaintiff's age, these are too attenuated to rise to the level of direct evidence of discrimination."

At the summary-judgment stage, of course, we must view the record "in the light most favorable to the nonmoving party," and we "may not make credibility determinations nor weigh the evidence when determining whether an issue of fact remains for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014); *see also Harrison v. Olde Fin. Corp.*, 572 N.W.2d 679, 681 n.5 (Mich. Ct. App. 1997) ("The defendant's employees in question deny making the comments, which, in turn, calls into question plaintiff's credibility. When credibility is at issue, summary disposition rarely is appropriate."). We are therefore required to assume that Davidson did in fact make the alleged statement for the purposes of deciding this appeal. At oral argument, Walbro's counsel noted that Lowe's testimony was uncorroborated, but conceded that this is immaterial to our summary-judgment analysis.

We have no difficulty concluding that the "you're kind of getting up there in years, you're at retirement age" comment constitutes direct evidence of discrimination. The Michigan Supreme Court's opinion in *DeBrow v. Century 21 Great Lakes, Inc.*, 620 N.W.2d 836 (Mich. 2001) (per curiam), is squarely on point regarding this issue. In *DeBrow*, the plaintiff sued his former employer for age discrimination after being fired. DeBrow testified that, "in the conversation in which he was fired, his superior told him that he was 'getting too old for this

shit.'" *Id.* at 838. The Court acknowledged that "this remark may be subject to varying interpretations." *Id.* At the summary-judgment stage, however, the Court noted that it had to view all evidence in the light most favorable to the plaintiff. *Id.* It concluded that the remark "could be taken as a literal statement that the plaintiff was 'getting too old' for his job and this was a factor in the decision to remove him from his position." *Id.* The Court thus determined that the remark constituted "direct evidence of unlawful age discrimination" and reversed the lower courts' grant of summary judgment in favor of the employer. *Id.* at 838–39. Most strikingly, the *DeBrow* Court held that this statement *alone* raised a genuine dispute of material fact, and it reversed on the basis of that single remark. *See id.*

The present case is on all fours with *DeBrow*. As in *DeBrow*, the statement in question was made at the meeting in which Lowe was fired, and it was made by Lowe's supervisor. The evidence of discrimination is, if anything, even stronger than in *DeBrow* because Davidson's statement was made in direct response to Lowe's question about why he was being fired. When read in the light most favorable to Lowe, Davidson's remark is a literal statement that Lowe's age was the *actual reason* why he was terminated. That is the textbook definition of what the ELCRA prohibits: discharging an employee "because of" the employee's age. *See* Mich. Comp. Laws § 37.2202(1)(a). Other Michigan caselaw reinforces the point that statements similar to Davidson's—even if not made at the time of firing—may constitute direct evidence of discrimination. *See, e.g.*, *Downey v. Charlevoix Cnty. Bd. of Rd. Comm'rs*, 576 N.W.2d 712, 718 (Mich. Ct. App. 1998) (concluding that statements such as "[i]f I have to, I will get rid of the older guys—you older guys and replace you with younger ones" were direct evidence of discrimination).

Walbro attempts to distinguish *DeBrow* on the ground that the supervisor in *DeBrow* who made the discriminatory statement personally terminated the plaintiff, whereas here Davidson was part of a group of people who decided to fire Lowe, and Lowe does not attribute any animus to the others involved in that decision. But this misses the critical fact that Davidson's remark came in response to Lowe's question of "why was I terminated?" The most natural reading of Davidson's answer is that Lowe's age was the reason why Walbro as an entity fired him,

regardless of which specific members of the company's decision-making team might have had an animus against him.

Walbro also points to what it describes as Davidson's track record of hiring older employees, asserting that the number and percentage of older workers at the Cass City facility increased after Davidson was hired. But Walbro has been unable to cite any analogous case in which similar statistical evidence has been held, at the summary-judgment stage of the case, to negate what would otherwise be direct evidence of age discrimination. We are likewise unaware of any such case, and we decline to so hold.

In short, as in *DeBrow*, Davidson's remark by itself could lead a reasonable jury to find that the company acted on a predisposition to discriminate on the basis of age in taking its adverse employment action against Lowe. We therefore conclude that Lowe has met his burden of raising a genuine dispute of material fact as to whether Walbro's "discriminatory animus was more likely than not a 'substantial' or 'motivating' factor in the decision." *See Sniecinski v. Blue Cross & Blue Shield of Mich.*, 666 N.W.2d 186, 193 (Mich. 2003). In the alternative, we would conclude that Lowe has raised a genuine dispute of material fact as to whether the animus was a but-for cause of his termination as well.

**D.     Mixed motives**

As noted above, the Michigan Supreme Court in *DeBrow* reversed on the basis of the superior's comment alone, without conducting a mixed-motives analysis. This, however, is uncommon. The Michigan courts more often hold that a court must also consider whether the defendant "would have made the same decision even if the impermissible consideration had not played a role in the decision." *Id.*; *see also Downey*, 576 N.W.2d at 718; *Harrison v. Olde Fin. Corp.*, 572 N.W.2d 679, 683–84 (Mich. Ct. App. 1997). We must therefore assess whether Walbro has made this showing as a matter of law, or whether this is a jury issue to be resolved at trial. *See Downey*, 576 N.W.2d at 718. Because the district court concluded that Lowe had not presented any direct evidence of age discrimination, it did not address the mixed-motives issue.

Walbro argues that it would have fired Lowe for legitimate reasons even if discriminatory animus were present. It cites as evidence the facts that, at the time of Lowe's firing, blow

molding and robotics constituted the large majority of the plant's production, that Lowe was not involved in the blow-molding operations, and that no one reported to Lowe other than the janitorial staff.  As a result, Rard and other Walbro officers—to whom Lowe does not attribute any discriminatory animus—believed that Lowe's position was unnecessary.  Walbro thus contends that Lowe's position would have been eliminated regardless of his age.

Lowe counters by reframing his situation in a different light.  According to Lowe, what happened is that he was effectively fired in a two-step, choreographed process where Davidson first removed the bulk of Lowe's responsibilities and then used his diminished position as an excuse to fire him.  Thus, Lowe says, one cannot simply look at what his responsibilities were at the time of his firing, since those responsibilities had already been diminished as a result of Davidson's age-related animus.

Lowe's argument, however, presumes that there was something illegitimate about the first of the two steps.  Walbro contends that there was not, pointing to Davidson's testimony that Lowe's understanding of blow molding and robotics was limited, and that Lowe relied heavily on Osterbeck and Windsor for help in these areas.  The company's position is also bolstered by the fact that, after Lowe was terminated, Walbro did not hire anyone to replace him.  Rather, according to a declaration from Arkells, Lowe's former job duties were reallocated to Osterbeck and another existing employee.

But Lowe has answers to this point as well.  Lowe notes that there is no documentary evidence of deficient performance prior to the time of his discharge.  He cites the excellent performance reviews that he received between 2010 and 2014.  Lowe further observes that, although he had been managing the blow-molding machines since 2009, he never received a single complaint in this area before Davidson's arrival.  There is also little evidence that Davidson ever conveyed any of his alleged concerns with Lowe's performance to Lowe.  Davidson conceded that he never conveyed any of these concerns to Lowe in writing, and Davidson appears to have told Lowe only once, verbally, that he believed Lowe "wasn't completely engaged with the blow molding side."  Finally, Davidson never completed a formal performance evaluation of Lowe in the roughly two years that Davidson supervised Lowe

despite the fact that Walbro's Employee Handbook suggests that such evaluations should take place annually.

We conclude, based on all of this contradictory evidence, that Walbro has not demonstrated as a matter of law that it would have terminated Lowe regardless of any age-related animus. To begin with, the fact that there were people other than Davidson involved in the decision to fire Lowe is not dispositive. "If a person who is improperly motivated gives significant input into a decision," a court may not dismiss a plaintiff's ELCRA discrimination claim simply because a collective actor such as a board "was the ultimate decision-maker." *Goodman v. Genesee County*, No. 266955, 2006 WL 2270411, at *4 (Mich. Ct. App. Aug. 8, 2006) (per curiam); *see also Harrison*, 572 N.W.2d at 682 n.7 (concluding that biased comments made by others participating in the hiring process to the individual who made the final hiring decision "must be imputed" to the ultimate decision maker at the summary-judgment stage). And there is certainly enough evidence in the record from which a reasonable jury could conclude that Davidson possessed age-related animus toward Lowe, as discussed above.

More broadly, this case presents itself in a different context from most disputes regarding the reasons for an employer's actions. Plaintiffs in such cases typically do not have direct evidence of discrimination, and are thus required to proceed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), for evaluating indirect evidence. Under that framework, when an employer articulates a legitimate, nondiscriminatory reason for its action, the burden is on the *plaintiff* to show that the articulated reason is pretextual. *In re Rodriguez*, 487 F.3d 1001, 1008 (6th Cir. 2007). But here, where Lowe has put forward direct evidence of discrimination, the burden is on *Walbro* to show "that it would have reached the same decision without consideration of [Lowe's] protected status." *See Downey v. Charlevoix Cnty. Bd. of Rd. Comm'rs*, 576 N.W.2d 712, 718 (Mich. Ct. App. 1998); *see also Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999) ("Once there is credible direct evidence, the burden of persuasion shifts to the defendant to show that it would have terminated the plaintiff's employment had it not been motivated by discrimination.").

Lowe's burden in this context, by contrast, is not great.  In *Downey*, for example, after an ELCRA plaintiff put forward direct evidence of age discrimination, the defendant employer argued that it had in fact discharged the plaintiff's decedent (Downey) because there was an altercation in which Downey physically attacked his supervisor.  In response, the plaintiff presented evidence that the supervisor deliberately provoked Downey into the fight.  The Michigan Court of Appeals held that there was a genuine dispute of material fact on this issue, thus letting the plaintiff's age-discrimination claim proceed to trial.  *Downey*, 576 N.W.2d at 719.  Notably, the court did not conduct a detailed analysis regarding which party's story was more likely to be true.  It simply reasoned that, in light of the "evidence that Downey was provoked into the altercation so that defendant could discharge him," the court could not hold as a matter of law that the altercation was the predominate cause of Downey's firing.  *Id.*

The same reasoning applies in the present case.  True enough, Walbro's story about why it fired Lowe—that it determined in good faith that his position was no longer necessary—is plausible.  But, as in *Downey*, Lowe's story is also plausible.  A reasonable jury could conclude that Davidson was biased against Lowe because of Lowe's age from the beginning of Davidson's tenure based on Davidson's repeated age-based remarks.  That same jury could likewise doubt that Davidson actually had any serious concerns about Lowe's job performance, reasoning that if he did, there would have been some documentary evidence of Lowe's allegedly poor performance in the record or that Davidson would have clearly communicated his concerns to Lowe at some point.

But Walbro argues that no inference can fairly be drawn from this lack of communication because formal evaluations were not in practice conducted regularly at the company.  A reasonable jury, however, would not have to simply take Walbro's word for this, especially in light of the Employee Handbook's statement that employees will be "evaluated by [their] supervisor on a formal basis each year."  To the contrary, a reasonable jury could determine that the lack of any such evaluation undercuts Walbro's explanation that Lowe's allegedly deficient job performance was the reason why he was stripped of most of his responsibilities.  This, in turn, bolsters Lowe's "two-step" theory that this initial action was intended to create an excuse for his later termination.

Walbro further contends that Lowe's positive performance evaluations prior to Davidson's arrival are irrelevant, citing *Orisek v. American Institute of Aeronautics & Astronautics*, 938 F. Supp. 185 (S.D.N.Y. 1996), for the proposition that a "new manager is allowed to appraise an employee's work according to his or her own expectations, even if those expectations are contrary to a prior manager's expectations." *Id.* at 191 (citation omitted). Even leaving aside the fact that *Orisek* is an out-of-circuit, nonprecedential district-court opinion, we find that case distinguishable. The first distinction is that *Orisek* involved the *McDonnell Douglas* approach for evaluating indirect evidence rather than a mixed-motives analysis for direct evidence, so Walbro faces a higher burden to show a lack of pretext.

Second, the district court in *Orisek* rejected the plaintiff's argument that the differences between her previous positive evaluations and the negative evaluation that she received under a new manager demonstrated pretext. *Id.* at 190–91. Lowe, on the other hand, has raised a genuine dispute as to whether Davidson's assessment of his abilities was actually the reason why Lowe was fired after most of his responsibilities had been reallocated. And again, the fact that (unlike in *Orisek*) there were no formal evaluations in this case adds plausibility to Lowe's position.

The other two cases that Walbro cites with regard to the mixed-motives question are similarly distinguishable. In the first, *Harris v. Giant Eagle Inc.*, 133 F. App'x 288 (6th Cir. 2005), this court held that the plaintiff had "not set forth sufficient evidence, direct or circumstantial, from which a reasonable jury could logically infer that race was a motivating factor in Giant Eagle's decision to terminate her." *Id.* at 297 (citation and internal quotation marks omitted). Lowe, by contrast, has made such a showing based on Davidson's statements. Indeed, an ELCRA plaintiff employing the direct-evidence approach must make this showing before a court will even address the mixed-motives issue. *See Sniecinski v. Blue Cross & Blue Shield of Mich.*, 666 N.W.2d 186, 192–93 (Mich. 2003). And in the other case, *Vredevelt v. GEO Group, Inc.*, 145 F. App'x 122 (6th Cir. 2005), this court concluded that the plaintiff had not presented any direct evidence and that, even if she had, the company's stated reason for taking the adverse employment action that it did was "unrebutted" by any evidence at all. *Id.* at 129–30. Neither of those circumstances is present in the case before us. As a result, neither case

is of any assistance in determining how the two sides' competing arguments should be assessed here.

In short, although there is evidence indicating that Walbro *might* have fired Lowe even in the absence of any discriminatory animus, the company has not met its burden to establish as a matter of law that it *would* have done so. We therefore hold that Lowe has raised a genuine dispute of material fact as to whether Walbro violated the ELCRA under a direct-evidence theory. Accordingly, we have no need to address the question whether Lowe has also raised a genuine dispute of material fact under the *McDonnell Douglas* framework for evaluating indirect evidence. *See DeBrow*, 620 N.W.2d at 838 ("The shifting burdens of proof described in *McDonnell Douglas* are not applicable if a plaintiff can cite direct evidence of unlawful discrimination.").

### III. CONCLUSION

For all of the reasons set forth above, we **REVERSE** the judgment of the district court and **REMAND** the case for further proceedings consistent with this Opinion.